IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**JAAAT TECHNICAL SERVICES, LLC,**

    **Plaintiff,**

v.                                                                                           **Civil Action No. 3:15cv235**

**TETRA TECH TESORO, INC.,**

    **Defendant.**

## MEMORANDUM OPINION

This matter comes before the Court on two motions: (1) Defendant Tetra Tech Tesoro, Inc.'s ("Tesoro") Motion to Dismiss for Lack of Subject-Matter Jurisdiction ("Motion to Dismiss"), (ECF No. 18); and, (2) Tesoro's Motion to Disregard Improper Filing, (ECF No. 23). With respect to the Motion to Dismiss, Tesoro contends, pursuant to Federal Rule of Civil Procedure 12(b)(1),[1] that the Amended Complaint fails to adequately plead this Court's subject matter jurisdiction. (ECF No. 19.) Plaintiff JAAAT Technical Services, LLC ("JAAAT") responded to the Motion to Dismiss, Tesoro replied, and JAAAT filed a surreply.[2] (ECF Nos. 20, 21, 22.)

In response to JAAAT's surreply, Tesoro filed the Motion to Disregard Improper Filing, which argues, pursuant to United States District Court for the Eastern District of Virginia Local Rule of Civil Procedure 7(F)(1), that the Court should strike JAAAT's filing as improper. (ECF

---

[1] "[A] party may assert the following defenses by motion: **(1)** lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1).

[2] JAAAT titled its surreply as "Supplemental Authority in Opposition to Motion to Dismiss Amended Complaint for Lack of Subject Matter Jurisdiction." (ECF No. 22.)

No. 24.) JAAAT responded to the Motion to Disregard Improper Filing, and Tesoro replied. (ECF Nos. 25, 26.)

The materials before the Court adequately present the facts and legal contentions, and argument would not aid the decisional process. Both matters are ripe for disposition. For the reasons stated below, the Court will deny both Tesoro's Motion to Dismiss and Tesoro's Motion to Disregard Improper Filing.

### I. Rule 12(b)(1) Standard

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenging the Court's subject matter jurisdiction, the burden rests with the plaintiff, the party asserting jurisdiction, to prove that federal jurisdiction is proper. *See Int'l Longshoremen's Ass'n v. Va. Int'l Terminals, Inc.*, 914 F. Supp. 1335, 1338 (E.D. Va. 1996) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)). A Rule 12(b)(1) motion to dismiss can attack subject matter jurisdiction in two ways. First, a Rule 12(b)(1) motion may attack the complaint on its face, asserting that the complaint fails to state a claim upon which subject matter jurisdiction can lie. *See Int'l Longshoremen's Ass'n*, 914 F. Supp. at 1338; *see also Adams*, 697 F.2d at 1219. In such a facial challenge, a court assumes the truth of the facts alleged by plaintiff, thereby functionally affording the plaintiff the same procedural protection he or she would receive under Rule 12(b)(6) consideration.[3] *See Int'l Longshoremen's Ass'n*, 914 F. Supp. at 1338; *see also Adams*, 697 F.2d at 1219.

---

[3] Tesoro limits its challenge to a facial one. (Def. Mem. Supp. Mot. Dismiss 2 ("As this matter is before the Court on a facial challenge to subject-matter jurisdiction, a detailed description of the dispute is of little benefit.").)

2

A Rule 12(b)(1) motion may also challenge the existence of subject matter jurisdiction in fact, apart from the pleadings. *See Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991); *Int'l Longshoremen's Ass'n*, 914 F. Supp. at 1338; *see also Adams*, 697 F.2d at 1219. In such a factual challenge, no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. *See Int'l Longshoremen's Ass'n*, 914 F. Supp. at 1338; *see also Adams*, 697 F.2d at 1219.

If the facts necessary to determine jurisdiction are intertwined with the facts central to the merits of the dispute, the proper course of action is for the court to find that jurisdiction exists and then to resolve the factual dispute on the merits unless the claim is made solely for the purpose of obtaining jurisdiction, or is determined to be wholly insubstantial and frivolous. *Bell v. Hood*, 327 U.S. 678, 682–83 (1946); *United States v. North Carolina*, 180 F.3d 574, 580 (4th Cir. 1999); *Adams*, 697 F.2d at 1219.

## II. Factual and Procedural Background

### A. Summary of Allegations in the Amended Complaint[4]

This dispute arises from Tesoro's alleged breach of five subcontracts regarding five construction projects at three military bases (the "Military Base Projects").[5] At each Military Base Project, JAAAT acted as the general contractor and Tesoro acted as a subcontractor.

---

[4] The Court assumes the well-pleaded factual allegations in the Complaint to be true and will view them in the light most favorable to Plaintiff, as would be required for Rule 12(b)(6) review. *See Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).

[5] The military bases at issue are: (1) Fort Bragg (located in North Carolina); (2) Fort Gordon (located in Georgia); and, (3) Fort Benning (located in Georgia) (collectively, the "Military Bases"). The subcontracts between JAAAT and Tesoro at Fort Bragg concerned the construction of a training facility ("Fort Bragg Training Facility Project"), a flight simulator ("Fort Bragg Flight Simulator Project"), and a brigade headquarters ("Fort Bragg Brigade Headquarters Project").

Specifically, Tesoro "was to serve as the project manager for each of the [Military Base Projects] and do the majority of the work on each project and was solely responsible for the management, scheduling, and impact of any delay for the work that it performed." (Am. Compl. ¶ 26.) "[Tesoro] breached the pertinent Subcontract[s] and its duties" by "fail[ing] to adequately perform the work required" and incurring "substantial delays·in the performance of its work on each project." (*Id.* ¶ 28.) JAAAT alleges that it has suffered damages as a result of Tesoro's breaches. JAAAT seeks damages with regard to each project, costs and expenses, and pre- and post-judgment interest.

### B. Procedural History

On April 17, 2015, JAAAT filed its Complaint against Tesoro seeking damages for Tesoro's alleged breach of five subcontracts regarding the Military Base Projects at the Military Bases.[6] (ECF No. 1.) JAAAT contended subject matter jurisdiction exists pursuant to federal enclave jurisdiction. On May 11, 2015, Tesoro moved to dismiss for lack of subject matter jurisdiction. (ECF No. 5.) JAAAT responded, and Tesoro replied. (ECF Nos. 10, 11.)

On July 8, 2015, the parties appeared for oral argument on the motion to dismiss for lack of subject matter jurisdiction and an evidentiary hearing on JAAAT's jurisdictional allegations. On July 9, 2015, the Court granted the motion to dismiss. (ECF No. 15.) The Court further granted JAAAT leave to file an amended complaint. On July 15, 2015, JAAAT filed the Amended Complaint, attaching numerous exhibits it has defined as "Jurisdictional Documents." (*See* Am. Compl. ¶ 12.) In light of the allegations contained in and appended to the Amended Complaint, Tesoro's motion to dismiss now presents, as characterized by the party, "a pure question of law." (Def. Mem. Supp. Mot. Dismiss 3, ECF No. 19.) JAAAT has responded to

---

[6] This dispute is one of many between JAAAT and Tesoro across numerous federal and state jurisdictions regarding the Military Base Projects.

this legal challenge, Tesoro has replied, and JAAAT has filed a surreply. (ECF Nos. 20, 21, 22.)[7]

### III. Analysis

For the reasons stated below, the Court will deny Tesoro's Motion to Dismiss. Framing its facial challenge here as a matter of first impression, Tesoro contends that subject matter jurisdiction does not exist because JAAAT's breach of contract claims do not *arise under* federal law. Tesoro advances this argument despite conceding, for purposes of its facial challenge, that the Military Bases constitute federal enclaves. Tesoro likewise does not refute JAAAT's allegations—or evidence[8]—that the federal government possesses exclusive legislative power over the Military Bases.

Instead, Tesoro outlines the issue as follows: "Does a federal court have subject-matter jurisdiction to hear a contractual dispute over events on a federal enclave if the parties have contracted to have state law apply and the suit raises no substantial federal question?"

---

[7] In response to JAAAT's surreply, Tesoro filed the Motion to Disregard Improper Filing. (ECF No. 23.) JAAAT has responded to that motion, and Tesoro has replied. (ECF Nos. 25, 26.)
Despite Tesoro's objection, the Court elects to consider JAAAT's improperly filed surreply, as well as the subsequent filings submitted by each party. Local Civil Rule 7(F)(1) states in pertinent part: Following the submission of a responsive brief and a reply brief, "[n]o further briefs or written communications may be filed without first obtaining leave of Court." E.D. Va. Loc. Civ. R. 7(F)(1). Notwithstanding JAAAT's failure to comply with Local Civil Rule 7(F)(1), in the interest of justice, the Court will consider all filings before it. Tesoro utilized its Motion to Disregard Improper Filing to attack the new arguments set forth by JAAAT and will not be prejudiced by consideration of the filing along with its own motion. The Court will deny Tesoro's Motion to Disregard Improper Filing.

[8] JAAAT's Amended Complaint attaches the Jurisdictional Documents, which purport to establish that the Military Bases are federal enclaves over which the United States has exclusive jurisdiction. (*See* ECF Nos. 16-1–16-11.) Tesoro does not challenge the sufficiency of the Jurisdictional Documents. While subject matter jurisdiction may be challenged at any time, *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006), the Court presumes that Tesoro, in the interest of judicial economy, would have disputed the exclusivity of federal jurisdiction at the earliest possible opportunity.

5

(Def. Mem. Supp. Mot. Dismiss 3.) Faced with this clear-cut question of law, the extensive briefing from the parties perplexes the Court. A longstanding body of constitutional law analyzing federal enclaves squarely demonstrates that Tesoro's argument is misguided.

"A federal enclave is created when a state cedes jurisdiction over land within its border to the federal government and Congress accepts that cession." *Alison v. Boeing Laser Tech. Servs.*, 689 F.3d 1234, 1235 (10th Cir. 2012). "[A]fter a state has transferred authority over a tract of land creating a federal enclave, the state may no longer impose new state laws on the land."[9] *Id.* Rather, the state law in place at the time of cession continues in force as federal law. *See James Stewart & Co. v. Sadrakula*, 309 U.S. 94, 100 (1940). This so-called "federalized" state law, in turn, confers on federal courts subject matter jurisdiction over claims otherwise characterized as "state law," such as the contract disputes here. *See Alison*, 689 F.3d at 1235.

The parties' contractual agreement to apply Virginia law does not disturb this conclusion. The Supremacy Clause of the United States Constitution[10] establishes that the application of federal law supersedes the application of state law. The Supremacy Clause mandates that when events giving rise to a lawsuit occur on a federal enclave, the Court must apply the enclave's

---

[9] This also is true for state common law causes of action developed after a state cedes its land. Courts have identified this logical corollary: "it would be an odd arrangement if a state judicial branch had the power to create binding common law that exceeded the reach of the state legislative branch." *Alison*, 689 F.3d at 1240

[10] The Supremacy Clause provides:

This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

U.S. Const. art. VI, cl. 2.

federalized state law. Thus, the Court cannot find that claims arising on federal enclaves—and thus governed by federal law—somehow arise under state law. The Court concludes that the exercise of federal enclave jurisdiction is appropriate in this case.

### A. This Court Possesses Subject Matter Jurisdiction over JAAAT's Claims

Because the events giving rise to JAAAT's claims occurred on the Military Bases, the Court finds that JAAAT's claims arise under federal law. Federal courts are courts of limited jurisdiction, and the burden of establishing jurisdiction rests with the party asserting it—here, JAAAT. *See Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994); *Hartley v. CSX Transp. Inc.*, 187 F.3d 422, 425 (4th Cir. 1999). As the basis for the Court's subject matter jurisdiction, JAAAT cites 28 U.S.C. § 1331, which provides: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Thus, subject matter jurisdiction is appropriate provided JAAAT meets its burden of demonstrating that the asserted claims arise under federal law, which JAAAT has done by invoking the federal enclave doctrine. The Court will trace in greater detail the jurisdictional limits of the federal enclave doctrine to explain the basis of this finding.

#### 1. The Jurisdictional Limits of the Federal Enclave Doctrine

##### a. The Federal Enclave Doctrine Requires Courts to Apply So-Called "Federalized State Law" When Appropriate

The federal enclave doctrine, which empowers Congress to exclusively regulate properties acquired from state governments, arises from Article I, section 8, clause 17 of the United States Constitution (the "Federal Enclave Clause"):

> Congress shall have the Power . . . *To exercise exclusive Legislation in all Cases whatsoever,* over such District (not exceeding ten Miles square) as may, by Cession of particular States, and the Acceptance of Congress, become the Seat of the Government of the United States, and to exercise like Authority over all Places purchased by the Consent of the Legislature of the State in which the Same

shall be, for the Erection of Forts, Magazines, Arsenals, dock-Yards, and other needful Buildings . . . .

U.S. Const. art. I, § 8, cl. 17 (emphasis added).

Under the federal enclave doctrine, when "the United States acquires with the 'consent' of the state legislature land within the borders of that State . . . the jurisdiction of the Federal Government becomes 'exclusive.'" *Paul v. United States*, 371 U.S. 245, 264 (1963). This legislative "power of Congress over federal enclaves . . . is obviously the same as the power of Congress over the District of Columbia" and "by its own weight, bars state regulation without specific congressional action." *Id.* at 263. Thus, the law applied to federal enclaves must be that of the federal government, and not the states.[11] *See Pac. Coast Dairy v. Dep't of Ag. of Cal.*, 318 U.S. 285, 294 (1943); *see also Allison*, 689 F.3d at 1237 ("The central principle of [the] federal enclave doctrine is that Congress has exclusive legislative authority over these enclaves.").

In the absence of subsequent federal legislation displacing state law, "the [state] law in effect at the time of the transfer of jurisdiction [from the state to United States] continues in force" on the federal enclave. *James Stewart & Co.*, 309 U.S. at 100.[12] Importantly, "future

---

[11] The Supreme Court recognizes at least three exceptions to the rule that the United States holds exclusive legislative jurisdiction over federal enclaves:

> 1) where Congress has, by statute, provided a different rule; 2) where the state explicitly retained the right to legislate over specific matters at the time of cession; and[,] 3) where minor regulatory changes modify laws existing at the time of cession.

*Allison*, 689 F.3d at 1237. Tesoro does not allege, and the Court does not find, that any of these exceptions pertain here.

[12] The continuation of state law as federal law "assures that no area however small will be left without a developed legal system for private rights." *James Stewart & Co.*, 309 U.S. at 100. Congress has enacted some assimilated laws, particularly criminal laws, to apply in federal enclaves. *Alison,* 589 F.3d at 1237. Congress also has allowed application of state law to some civil claims, including wrongful death, workers' and unemployment compensation, and fish and

8

statutes of the state are not a part of the body of laws in the ceded area," and "Congressional action is necessary to keep [the laws of the federal enclave] current." *Id.* at 100; *see also Paul*, 371 U.S. at 268 ("Since a State may not legislate with respect to a federal enclave unless it reserved the right to do so when it gave its consent to the purchase by the United States, only state law existing at the time of the acquisition remains enforceable, not subsequent laws."). Subsequent state common law also does not apply. *Allison*, 689 F.3d at 1240 (explaining that "[w]hen a state speaks through its courts, it creates new law no less than when it speaks through the legislature").

### b. Federal Courts Possess Subject Matter Jurisdiction over Lawsuits Arising Out of Events Occurring on Federal Enclaves

Where Congress has *exclusive* power to pass legislation affecting a federal enclave, federal courts possess subject matter jurisdiction over lawsuits arising out of events that occur on that territory. This is because, in effect, Congress's "exclusive legislative jurisdiction . . . federalizes state law." *Jones v. John Crane-Houdaille, Inc.*, No. Civ. CCB-11-2374, 2012 WL 1197391, at *2 (D. Md. Apr. 6, 2012). Stated differently, "any law existing in territory over which the United States has exclusive sovereignty must derive its authority and force from the United States and is for that reason federal law." *Akin v. Big Three Indus., Inc.*, 851 F. Supp. 819, 821–22 (E.D. Tex. 1994) (citing *Mater v. Holley*, 200 F.2d 123, 124 (5th Cir. 1952)). As explained by one court of appeals, "[i]t would be incongruous to hold that although the United

---

game regulation. *Id.* "But in many important areas of law that are traditionally the responsibility of states . . . [including contract law] . . . there is no federal assimilative statute." *Id.* at 1237–38.

This circumstance does not exist in the absence of criticism. *See, e.g.*, Chad DeVeaux, *Trapped in the Amber: State Common Law, Employee Rights, and Federal Enclaves*, 77 Brook. L. Rev. 499, 503 (2012) ("With respect to legal areas neglected by Congress, federal enclaves have devolved into jurisprudential Jurassic Parks, 'sanctuar[ies] for the obsolete restrictions of the common law.'" (quoting *Capetola v. Barclay-White Co.*, 48 F. Supp. 797, 800 (E.D. Pa. 1943)).

States has exclusive sovereignty in the area here involved, its courts are without power to adjudicate controversies arising there." *Mater*, 200 F.2d at 124.

Numerous courts of appeals, including the United States Court of Appeals for the Fourth Circuit, have adopted this longstanding position.[13] Likewise, courts in this District have consistently applied it. *See, e.g., Federico v. Lincoln Military Hous.*, 901 F. Supp. 2d 654, 665 (E.D. Va. 2012) ("The law appears clear that 'where exclusive jurisdiction is ceded to the United States, the laws of the state at the time of cession will continue in effect as federal law, and subject matter jurisdiction under 28 U.S.C. § 1331 is proper.'" (quoting *Melendez v. Glastic Corp.*, No. 2:95cv1112, 1996 WL 35020766, at *2 (E.D. Va. Mar. 7, 1996));[14] *Anderson v. Crown Cork & Seal*, 93 F. Supp. 2d 697, 700 (E.D. Va. 2000) ("Litigation arising from lands

---

[13] *See, e.g., Stokes v. Adair*, 265 F.2d 662, 665–66 (4th Cir. 1959) (finding federal district court possessed jurisdiction over non-diverse parties for personal injuries on a federal enclave); *accord Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1250 (9th Cir. 2006) (finding removal proper where tort claims allegedly occurred on a federal enclave); *Akin v. Ashland Chem. Co.*, 156 F.3d 1030, 1034 (10th Cir. 1998) (finding that "[p]ersonal injury actions which arise from incidents occurring in federal enclaves may be removed to federal district court as part of federal question jurisdiction"); *Mater*, 200 F.2d at 124–25 (finding that federal courts have jurisdiction over torts committed on federal enclaves).

[14] While the *Federico* court favorably cited *Melendez* for the premise that state laws continue as federal laws upon the cession of exclusive jurisdiction to the United States, the *Federico* court disagreed with the *Melendez* court's decision to apply state law when concurrent jurisdiction existed over the Norfolk Naval Base between the United States and Virginia. *Federico*, 901 F. Supp. 2d at 665, 668–69, 671 (distinguishing *Melendez* with respect to concurrent jurisdiction analysis).
 In *Melendez*, the district court granted a motion to remand an action alleging personal injuries resulting from an explosion that occurred at the Norfolk Naval Base. *Melendez*, 1996 WL 35020766, at *1. The *Melendez* court found that because Virginia and the United States shared concurrent jurisdiction over the Norfolk Naval Base, Virginia's laws "do not continue in effect as federal law conferring original jurisdiction under 28 U.S.C. § 1331." *Id.* at *3. The *Melendez* court remanded the action back to state court due to the lack of subject matter jurisdiction. *Id.* at *4.
 *Melendez* does not affect the Court's determination here. JAAAT does not allege, nor does Tesoro argue, that concurrent jurisdiction exists over the Military Bases.

10

obtained pursuant to [the Federal Enclave Clause] is rightfully pursued in federal court under federal enclave jurisdiction."); *McCormick v. C.E. Thurston & Sons, Inc.*, 977 F. Supp. 400, 402 (E.D. Va. 1997) ("[S]uits regarding property purchased [pursuant to the Federal Enclave Clause] are to occur in the federal courts of the United States."). Thus, it is undisputed that "claims arising on a federal enclave provide a separate and independent basis for federal question jurisdiction."[15] *Federico*, 901 F. Supp. 2d at 663 n.2.

### 2. JAAT's Claims Arise Under Federal Law

#### a. JAAAT's Claims Constitute Federalized State Law Claims

For purposes of this facial challenge, the parties do not dispute that each Military Base Project is located on a federal enclave. (Def. Mem. Supp. Mot. Dismiss 4 n.1 ("Whether the relevant military bases are actually federal enclaves is not at issue in this motion."); Def. Reply 1, ECF No. 21 ("The dispositive issue is not whether the military bases are federal enclaves, because Tesoro concedes they are for purposes of the motion.").) Further, JAAAT properly alleges that the events giving rise to its breach of contract claims occurred on the Military Bases. (Am. Compl. ¶ 55.) Thus, the breach of contract claims asserted by JAAAT constitute federalized state law claims. *See Federico*, 901 F. Supp. 2d at 665.

Tesoro, nonetheless, contends that causes of action asserting federalized state law do not actually arise under federal law. Seemingly, Tesoro argues that these causes of action arise under state law because state law originally "created" the cause of action. (*See* Def. Mem. Supp.

---

[15] Congress's exclusive authority to pass legislation affecting a federal enclave does not necessarily confer on federal courts *exclusive* judicial jurisdiction. *See Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 481 (1981) ("Nothing inherent in exclusive federal sovereignty over a territory precludes a state court from entertaining a personal injury suit concerning events occurring in the territory and governed by federal law." (citing *Ohio River Contract Co. v. Gordon*, 244 U.S. 68 (1917)). Thus, in light of concurrent judicial jurisdiction, JAAAT could have brought this case in state court.

Mot. Dismiss 7 (citing *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994) ("In determining whether an action presents a federal question under § 1331, a court must first discern whether federal or state law creates the cause of action.")).) This argument fails.

Tesoro misreads the effect of a state's decision to cede exclusive jurisdiction to the United States. As multiple courts in this District flatly conclude: "When exclusive jurisdiction is ceded to the United States, the laws of the state at the time of the cession *will continue in effect as federal law, and subject matter jurisdiction under 28 U.S.C. § 1331 is proper.*" *Melendez*, 1996 WL 35020766, at *2 (emphasis added) (citing *James Stewart & Co.*, 309 U.S. at 97); *see also Federico*, 901 F. Supp. 2d at 665; *Anderson*, 93 F. Supp. 2d at 699; *McCormick*, 977 F. Supp. at 402. Whether a state initially "created" the cause of action has no bearing on whether a federal court has jurisdiction over its now-federal nature. Tesoro's attempt to cherry-pick language regarding which government "created" the law does not persuade. By their federalized nature, JAAAT's claims arise under federal law. *See Federico*, 901 F. Supp. 2d at 665.

### b. Parties Cannot "Opt Out" of the Application of Federal Law

In spite of well-settled law that even common law claims arising on a federal enclave provide a basis for federal question jurisdiction, Tesoro posits that the choice of law clause here somehow precludes a finding of subject matter jurisdiction. Specifically, Tesoro contends that "[i]f the parties have selected Virginia law by an enforceable choice of law provision, then only questions of Virginia law will be at issue." (Def. Mem. Supp. Mot. Dismiss 8.) This novel argument—which essentially advances the idea that parties to a contract, by their choosing, may negate the application of federal law—misses the mark.

Interpreting the Supremacy Clause, the Supreme Court has explained that "[i]t is a seminal principle of our law 'that the constitution and the laws made in pursuance thereof are

supreme; that they control the constitution and laws of the respective States, and cannot be controlled by them.'" *Hancock v. Train*, 426 U.S. 167, 178 (1976) (quoting *McCulloch v. Maryland*, 4 Wheat. 316, 426 (1819)). Corollary to this principle, "[i]t is of the very essence of supremacy to remove all obstacles to its action within its own sphere, and so to modify every power vested in subordinate governments, as to exempt its own operations from their own influence."[16] *Id.* (quoting *McCulloch*, 4 Wheat. at 427). Thus, "it has been settled that state law that conflicts with federal law is 'without effect.'" *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 516 (1992) (quoting *Maryland v. Louisiana*, 451 U.S. 725, 746 (1981)). As noted by one court, "[t]he [S]upremacy [C]lause of the United States Constitution establishes a constitutional choice-of-law rule, mak[ing] federal law paramount . . . ." *Viva! Int'l Voice For Animals v. Adidas Promotional Retail Operations, Inc.*, 162 P.3do 569, 571 (Cal. 2007); *see also Alison*, 689 F.3d at 1235 ("[The] Federal enclave doctrine operates as a choice of law doctrine that dictates which law applies to causes of action arising on these lands.").[17]

Here, Tesoro argues for the application of state law in spite of the existence of federal law—federalized state law—that governs the dispute.[18] In light of the Supremacy Clause, only

---

[16] The *Hancock* court addressed the Supremacy Clause in tandem with the Federal Enclave Clause and concluded that "the activities of the Federal Government are free from regulation by any state." *Hancock*, 426 U.S. at 178 (quoting *Mayo v. United States*, 319 U.S. 441, 445 (1943)).

[17] As one commenter has explained: "The Supremacy Clause . . . dictates that courts apply the traditional *lex loci* doctrine—that 'the law of the [place] where the wrong occurred' governs an action—to transactions arising within federal enclaves." DeVeaux, *supra*, at 528 (quoting Lea Brilmayer, *Conflict of Laws* 17 (4th ed. 1995)). Thus, "when the pertinent events giving rise to a suit 'occurred on a federal enclave' the court *must* apply the federalized state law applicable on the enclave." *Id.* (emphasis added) (citations omitted).

[18] The Court need not decide, for purposes of this motion, the precise contours of JAAAT's causes of action as they existed, under then-applicable state law, when the United States obtained exclusive legislative jurisdiction over the Military Bases.

13

federal law may apply to JAAAT's claims. The parties' election to the contrary does not override the Constitution. *Cf. Pac. Coast Dairy*, 318 U.S. at 294 ("To hold otherwise would be to affirm that California may ignore the Constitutional provision that 'This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; . . . shall be the supreme Law of the Land; . . . .'" (omissions in original)). Accordingly, assuming the truth of JAAAT's well-pleaded allegations, the claims arise under federal law, and subject matter jurisdiction is appropriate here.

### IV. Conclusion

For the foregoing reasons, the Court will deny Tesoro's Motion to Dismiss (ECF No. 18) and will deny Tesoro's Motion to Disregard Improper Filing (ECF No. 23).

An appropriate Order shall issue.

/s/
M. Hannah Lauck
United States District Judge

Richmond, Virginia
Date: 3/29/16